IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Michael Zaletel, d/b/a i4software, | |
| Plaintiff, | |
| v. | Case No. 1:16-cv-01230-TSE-TCB |
| Prisma Labs, Inc., | |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT PRISMA LABS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTS ................................................................................................................... 2

A.   The Parties and the Dispute ................................................................................................. 2

B.   Defendant's Contacts with Virginia .................................................................................... 4

C.   Defendant's Contacts with California .................................................................................. 7

ARGUMENT ................................................................................................................................ 9

A.   The Court Has Personal Jurisdiction Over Prisma ............................................................. 9

    1.   This Court has specific personal jurisdiction over Prisma
        under the Virginia Long-Arm Statute ................................................................ 10

    2.   Personal Jurisdiction over Prisma is Consistent with
        Constitutional Due Process ................................................................................. 12

        (a)   Defendant has purposefully directed its activities to
            users in Virginia ..................................................................................... 13

        (b)   Zaletel's Trademark Infringement and Unfair Competition
            Claims Arise out of Defendant's activities directed at
            Virginia residents .................................................................................. 17

        (c)   Personal jurisdiction over Prisma in Virginia is
            reasonable .............................................................................................. 18

B.   Transfer Would Be Less Convenient and Would Prejudice Plaintiff ............................. 20

CONCLUSION ........................................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*AESP, Inc. v. Signamax, LLC,*
  29 F. Supp.3d 683 (E.D. Va. 2014) ................................................................. 15

*Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.com,*
  128 F. Supp. 2d 340 (E.D. Va. 2001) ...................................... 9, 11, 16, 17

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,*
  293 F.3d 707 (4th Cir. 2002) ...................................... 11, 12, 13, 18

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985).................................................................................. 13

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.,*
  No. 15-21, 2015 U.S. Dist. LEXIS 50253 (E.D. Va. Apr. 16, 2015) ..................... 22

*Combs v. Bakker,*
  886 F.2d 673 (4th Cir. 1989) ....................................................................... 10

*Consulting Eng'rs Corp. v Geometric, Ltd.,*
  561 F.3d 273 (4th Cir. 2009) ........................................................................ 9

*Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners,*
  229 F.3d 448 (4th Cir. 2000) ....................................................................... 10

*First Fitness Int'l, Inc. v. Thomas,*
  533 F. Supp. 2d 651 (N.D. Tex. 2008) ........................................................ 19

*Graduate Mgmt. Admission Council v. Raju,*
  241 F. Supp. 2d 589 (E.D. Va. 2003) ......................................................... 11

*In re Celotex Corp.,*
  124 F.3d 619 (4th Cir. 1997) ........................................................................ 9

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945)..................................................................................... 13

*Intercarrier Commc'ns LLC v. WhatsApp Inc.,*
  No. 12-776, 2013 U.S. Dist. LEXIS 131318 (E.D. Va. Sept. 12, 2013) ............ 17

*Jones v. Boto Co.,*
  498 F. Supp. 2d 822 (E.D. Va. 2007) ................................................... passim

*Koh v. Microtek Int'l, Inc.,*
  250 F. Supp. 2d 627 (E.D. Va. 2003) ..................................................... 21, 22

*Lamporello v. Falwell,*
  420 F.3d 309 (4th Cir. 2005) ...................................................................... 11

*Match.com, L.L.C. v. Fiesta Catering Int'l, Inc.,*
  No. 12-363, 2013 U.S. Dist. LEXIS 14099 (E.D. Va. Jan. 31, 2013) ................ 11

*Prod. Grp. Int'l, Inc. v. Goldman,*
  337 F. Supp. 2d 788 (E.D. Va. 2004) ........................................................... 9

**Statutes**

15 U.S.C. § 1114.................................................................................... 3, 17

15 U.S.C. § 1125.................................................................................... 3, 17

28 U.S.C. § 1404....................................................................................... 21

**Other Authorities**

Virginia Code § 8.01-328.1 ........................................................................ 10

## PRELIMINARY STATEMENT

Plaintiff Michael Zaletel is the owner of the federally registered trademark Prizmia® for use on downloadable, photo-editing applications ("apps") for smartphones, such as the iPhone. Plaintiff's Prizmia® app provides its users with photographic "filters" that alter the artistic style of photographs.  Plaintiff alleges in his complaint that defendant Prisma Labs ("Prisma") has infringed the Prizmia® trademark in Virginia by distributing its similar "Prisma" photo filtering app to customers in Virginia.

The Court should deny defendant's motion to dismiss or transfer for two reasons:

First, this Court has specific personal jurisdiction over Prisma based on plaintiff's ongoing contacts with Virginia connected to plaintiff's infringement claim.  Prisma distributes the Prisma app in every state through the Apple App Store and Google Play, the two largest app distributors in the United States, and acknowledges that many Virginians are among the 70 million users who have downloaded the Prisma app.  Once a Virginia user downloads the Prisma app to her smartphone, Prisma directly services that user on an ongoing basis by using Prisma's remote servers to process photographs and videos the user wants filtered and to send the processed images back to the user in Virginia.  Prisma's relationship with Virginia users of its Prisma app is therefore direct, continuous, and purposeful.  In addition, Prisma has actively promoted the Prisma app in Virginia by (a) making its CEO available for interviews published in USA Today, a Virginia-based newspaper, and several other national publications circulated in Virginia; and (b) maintaining a website, http://prisma-ai.com, available in Virginia, that directly connects potential Virginia users to the Apple App Store and Google Play to download the Prism app.

Second, Prisma's transfer motion should be denied because litigation in California would actually be *less* convenient for the parties and witnesses than litigation in Virginia. Plaintiff lives and operates his business in Raleigh, North Carolina, a few hours from this Court and thousands of miles from California. Defendant's CEO and most of its employees live in Russia, thousands of miles from both Virginia and California. Defendant's contacts with California are slight and recently acquired, and this Court is closer to Moscow than Moscow is to San Francisco. It is more convenient for these potential witnesses to travel to Virginia than California. Although Prisma alleges it now employs two programmers in California, those employees are irrelevant to this trademark infringement case based on Prisma's selection of its product mark months before they were hired. Transfer to California would therefore force plaintiff to litigate thousands of miles from home with no off-setting benefit to defendant.

## RELEVANT FACTS

### A.      The Parties and the Dispute

Plaintiff Michael Zaletel is a software developer who lives and works in Raleigh, North Carolina. (Dkt. No. 20, Zaletel Decl.[1] ¶ 2.) In 1999, Zaletel founded i4software, a sole proprietorship, which since 2009 has developed and sold applications, or apps, for use in the fast-growing smart phone market. (*Id.* ¶ 4.) In August 2014, Zaletel began selling his Prizmia® app on the Apple App Store. (*Id.* ¶ 11.) Prizmia® is a photo and video editing app that allows users to modify photographs or videos with ninety different filters that alter the artistic style of the original or add an artistic effect. (*Id.* ¶ 11.)

---

[1] The Declaration of Michael E. Zaletel ("Zaletel Decl.") was filed on November 22, 2016 (Dkt. No. 20) in support of Plaintiff's Motion for a Preliminary Injunction, which currently is before the Court.

Plaintiff is the owner of the federally registered trademark Prizmia®, Reg. No. 4,682,035, which was registered on the Principal Register of the U.S. Patent and Trademark Office ("USPTO") on February 3, 2015, for "downloadable software for use with mobile electronic devices for the purpose of photo and video capturing and editing" and "downloadable software in the nature of a mobile application for photo and video capturing and editing," in International Class 9. (*Id.* ¶ 13.)

Defendant Prisma Labs, Inc. is a software company based in Moscow, Russia, that is incorporated and has a registered agent for service of process in Delaware. (Rinn Decl.[2], Ex. 1 at 2; Dkt. No. 25, Moiseenkov Decl.[3] ¶¶ 2, 6; Rinn Decl., Ex. 2.) In June 2016, Prisma Labs launched its Prisma photo filtering app on the Apple App Store for use on iPhones and iPads. (Rinn Decl., Ex. 1 at 1.) Prisma also distributes its app on the Google Play Store for use on devices having the Android operating system. (Rinn Decl., Ex. 3 at 1.) The Prisma app competes directly with the Prizmia® app for customers who wish to download an app that will transform photographs into artistic images having different styles or effects and is delivered to customers through the same channels of trade on the Apple App Store. (Dkt. No. 20, Zaletel Decl. ¶¶ 26-27.)

On September 29, 2016, plaintiff filed its complaint against Prisma in the Eastern District of Virginia, alleging that Prisma's distribution of its Prisma app in Virginia and elsewhere constitutes infringement of plaintiff's federally registered trademark, Prizmia®, under 15 U.S.C. § 1114(a), and unfair competition under 15 U.S.C. §1125(a). (Dkt. No. 1.) Because plaintiff

---

[2] The Declaration of Alexander S. Rinn ("Rinn Decl.") is filed herewith in connection with plaintiff's opposition to Prisma's motion to dismiss.

[3] The Declaration of Alexey Moiseenkov ("Moiseenkov Decl.") was filed on November 22, 2016 (Dkt. No. 25) in support of defendant Prisma's motion to dismiss, which is the subject of this opposition brief.

could not identify any place of business for Prisma Labs in the United States, plaintiff served its summons and complaint in this case on the registered agent for service listed in Prisma's corporate filing in the State of Delaware where Prisma is incorporated.  (Rinn Decl., Ex. 4.)

Plaintiff alleges that because of the similarity between plaintiff's registered trademark, Prizmia®, and defendants mark Prisma, defendant's promotion and distribution of its app have confused and misled Virginia consumers, deprived plaintiff of Virginia sales, and damaged its reputation and goodwill in Virginia.  (*See* Dkt. No. 1 at ¶ 30.)  In a related context, on November 25, 2016, the USPTO issued an office action refusing defendant's application to register Prisma as a trademark because the proposed use was confusingly similar to plaintiff's registered trademark Prizmia®.  (Rinn Decl., Ex. 5 at 3-6.)

**B.      Defendant's Contacts with Virginia**

Plaintiff sells its Prizmia® app to paying customers who purchase the app on the Apple App Store.  (Dkt. No. 20, Zaletel Decl. ¶ 24.)

Defendant Prisma, in contrast, allows users to download its Prisma app without charge on the Apple App Store and the Google Play store.  (Rinn Decl., Ex. 1 at 2.)  Prisma's CEO Alexey Moiseenkov explained to the *New York Times* that, while Prisma Labs was giving the app to consumers for free, Prisma planned to generate revenue by letting large brands sponsor a few effects each month, which will be its main path to revenue.  (*Id*.)  Prisma's sponsors pay to promote their own brands by having their name associated with a filter.  (Rinn Decl., Ex. 6 at 4.) Palmolive and a company called Gett, which competes with Uber, have both sponsored Prisma filters.  (*Id.*; *see also* Rinn Decl., Ex. 7 at 5.)  Prisma investor Aleksej Gubarev has said that between 10 and 15 companies are lined up to pay for sponsored filters on the Prisma app.  (Rinn Decl., Ex. 7 at 5.)

Like plaintiff's Prizmia® app, the Prisma app uses filters to transform photographs and videos into images that resemble a variety of styles of art, depending on the filter chosen by the user.  (Rinn Decl., Ex. 6 at 3.)  As shown in this Prisma-filtered image, the processed photo is stamped with Prisma's watermark and name:



(Rinn Decl., Ex. 8 at 1.)

Prisma boasts that the Prisma app has been downloaded more than 70 million times as of October 2016, and Prisma does not dispute that many of these downloads are to Virginia residents.[4]  (Rinn Decl., Ex. 9 at 2.)  Prisma distributes its app through the two largest app stores in the United States: Apple's iTunes App Store and Google Play.  (Dkt. No. 25, Moiseenkov Decl. ¶ 3.)  Prisma does not dispute that it expected these distributors to target Virginia (among other places) for distribution of the Prisma app.  (*See* Dkt. No. 24, Prisma Br. 7.)  The ubiquitous promotion and use of these stores throughout the country, including in Virginia, ensures that

---

[4] In its brief, defendant says that "although some Virginia residents presumably use Prisma Labs' popular app, plaintiff has not shown that Virginia residents use this software proportionally more than residents of any other state." (Dkt. No. 24, Prisma Br. at 7.)

many copies of Prisma's successful app—plausibly thousands or even millions—have been downloaded and used in Virginia.  (*See id.*; Rinn Decl., Ex. 9 at 2 (more than 70 million downloads as of October).)

After its customers have downloaded the Prisma app to their smartphones, Prisma has a direct and continuing relationship with them as they use the app to apply filters to their photograph images.  When a Prisma user asks the Prisma app to filter a photo or video the app sends it to Prisma's computer servers for processing; Prisma then processes and returns it to the user's smartphone in Virginia.  (Rinn Decl., Ex. 1 at 2.)  Prisma does not simply turn its software over to the Apple App Store or Google Play and wash its hands of its product.  The *New York Times* explained in an article sourced to Prisma's CEO that, "The app sends your photo to the company's servers, where your image is reworked in a few seconds and then sent back to the app, where you can see the results." (*Id.*; *see also* Rinn Decl., Ex. 10 at 6.)  Thus, when a user employs the Prisma app to filter a photo, Prisma sends a targeted, electronic communication directly to that user—including users in Virginia.[5]

In addition to providing this direct service to its Virginia app users, Prisma Labs also operates a website, http://prisma-ai.com, which is devoted to promoting the Prisma app and facilitating the download of the app by potential customers including those in Virginia.  (Rinn Decl., Ex. 3.)  Prisma's website includes active links to the Apple App Store and the Google Play Store, which allow users to click straight through to the Prisma app and download it to their smartphones.  (*Id.*)  The website also includes excerpts from numerous published articles that provide technical information about Prisma and its app.  (*Id.*)

---

[5] Prisma reportedly has recently changed its software so that some filters can be applied on a user's smart phone, without having to contact Prisma's servers.  (Rinn Decl., Ex. 11 at 1-2.)  The same report, however, notes that many filters still require communication with Prisma's servers. (*Id.* at 3.)  In any event, past photo processing on Prisma's servers already have created numerous targeted contacts with users in Virginia.

Prisma Labs has actively promoted the Prisma app in Virginia by making its CEO and other employees available for press interviews that have been published in several national publications, including the *New York Times,* and *USA Today,* which is based in McLean, Virginia.  (Rinn Decl., Ex. 1; Rinn Decl., Ex. 12; *see* Rinn Decl., Ex. 13 at 2.)  On August 9, 2016, *USA Today* published a story about Prisma that was based on an interview it conducted with Prisma CEO Mr. Moiseenkov.  (Rinn Decl., Ex. 12.)  The article was written by Brett Molina, a *USA Today* reporter based in Tysons Corner, Virginia.  (*Id.*; *see* Rinn Decl., Ex. 14.)  Mr. Moiseenkov and other Prisma employees have given numerous additional interviews in multiple national publications with distribution in Virginia, in which they promoted Prisma.  (*E.g.* Rinn Decl., Ex. 1 (New York Times); Rinn Decl., Ex. 10 at 3 (TechCrunch); Rinn Decl., Ex. 7 at 2 (Business Insider); Rinn Decl., Ex. 9 at 2 (TechCrunch, interview with Prisma's Mr. Airapetyan).)  Prisma has republished excerpts from several of these articles on its website, http://prisma-ai.com.  (Rinn Decl., Ex. 3.)

## C.     Defendant's Contacts with California

Defendant alleges in its motion to transfer that its headquarters are in Sunnyvale, California.  (Dkt. No. 24, Prisma Br. at 7, 9; Dkt. No. 25, Moiseenkov Decl. ¶5.)

The evidence shows that defendant's activities are based in Russia, not California, and that its CEO and most of its employees live in Russia.  An August 10, 2016 article in *Business Insider*, reporting on an interview with Prisma's CEO Moiseenkov, reported that Mr. Moiseenkov "leads a team of nine people at Prisma Labs in Moscow." (Rinn Decl., Ex. 7 at 1.) The *New York Times* reported on August 3 that Prisma is "based in Moscow." (Rinn Decl., Ex. 1 at 2; *see also* Rinn Decl., Ex. 15 at 2.)  Prisma expressly admits in its brief that "most of Prisma Labs' employees reside in Russia" and that its CEO's only contact with California is that he

"regularly travels to the Bay Area." (Dkt. No. 24, Prisma Br. at 7.) And Prisma's CEO corroborates all this in his declaration, signed in Moscow, where he states that Prisma was started in Moscow and that most of its employees live in Russia. (Dkt. No. 25, Moiseenkov Decl. ¶¶ 2, 6-7.)

Although Prisma Labs asserts that its headquarters are in California, Prisma Labs is not registered to do business in California according to the California Secretary of State's website. (Rinn Decl. ¶ 19.) In Delaware where Prisma Labs is incorporated, the Secretary of State's report for Prisma Labs lists as Prisma's only address the address of a registered agent for service of process in Wilmington, Delaware. (Rinn Decl., Ex. 2.) Prisma also used the Delaware agent's address as its official corporate address when it filed its trademark application for Prisma with the USPTO in August of this year. (Rinn Decl., Ex. 16 at 5.) As of November 25, 2016, when the USPTO denied Prisma's application to register Prisma as a trademark, the Delaware agent's address was still listed as Prisma's address. (Rinn Decl., Ex. 5 at 1.) There is no reference in any of these government documents to a connection between Prisma and California.

If Prisma has recently established contacts in California, these contacts are not reflected in Prisma's government filings. Prisma's CEO Moiseenkov declares that "Prisma Labs has two software developers located in Palo Alto, California." (Dkt. No. 25, Moiseenkov Decl. at ¶ 6.) He does not say, however, whether they were hired before the complaint was filed or how they are relevant to a trademark case based on a product naming decision that took place in Russia many months ago.

## ARGUMENT

### A.  The Court Has Personal Jurisdiction Over Prisma

Defendant argues in its brief that this Court lacks personal jurisdiction because defendant has not purposely directed activities at the residents of Virginia.  (Dkt. No. 24, Prisma Br. at 1, 3-4.)  The truth, however, is that Prisma's contacts with Virginia are more pervasive and direct than it admits in its brief.

"Resolution of a personal jurisdiction challenge by a non-resident defendant requires a two-step inquiry."  *Prod. Grp. Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 793 (E.D. Va. 2004). First, the Court must determine whether Virginia's long-arm statute authorizes jurisdiction over the defendants considering the facts of the case.  Second, the Court must determine whether the exercise of personal jurisdiction comports with the due process requirements of the United States Constitution.  *Consulting Eng'rs Corp. v Geometric, Ltd.,* 561 F.3d 273, 277 (4th Cir. 2009); *Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.com*, 128 F. Supp. 2d 340, 347 (E.D. Va. 2001).

When a court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff "only has the burden to make a prima facie showing that the exercise of personal jurisdiction over the defendant is proper.  *Jones v. Boto Co.*, 498 F. Supp. 2d 822, 825 (E.D. Va. 2007) (citing *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997)).  "In determining whether the plaintiff has made the requisite showing, 'the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'"  *Id.*  (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

**1.     This Court has specific personal jurisdiction over Prisma under the Virginia Long-Arm Statute**

Virginia's long-arm statute has been liberally construed to extend personal jurisdiction to the full extent permitted by the Due Process Clause of the Constitution.  *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000).  The Virginia long-arm statute provides that specific personal jurisdiction is proper over a non-resident who, "acting directly or by an agent," causes tortious injury in Virginia by an act or omission outside of Virginia if that person (a) regularly does or solicits business in Virginia or (b) engages in any other persistent course of conduct in Virginia.  Virginia Code § 8.01-328.1(A)(4).

Plaintiff Zaletel is the owner of the federally registered trademark Prizmia®, which gives him the exclusive right to use his trademark on photo editing apps throughout the United States. (Dkt. No. 20, Zaletel Decl. ¶ 13.)  Prisma infringes plaintiff's registered trademark each time it advertises, markets, or distributes its app to customers in Virginia.  These infringing acts by Prisma include (a) distributing the Prisma app to Virginia users via downloads through Prisma's agents, the Apple App Store and Google Play; (b) distributing the Prisma app to Virginia users via Prisma's website, http://prisma-ai.com, which links customers directly to the Apple App Store and Google Play; (c) processing images on its servers outside the State of Virginia and sending the processed images (via the Prisma app) to the smart phone of a Virginia consumer. These acts are tortious and constitute regular business and a persistent course of conduct for purposes of the Virginia long-arm statute.

Courts in this district have consistently held that trademark infringement is a tort within the meaning of the Virginia long-arm statute.  *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 593 (E.D. Va. 2003); *see also Alitalia-Linee*, 128 F. Supp. 2d at 348 ("trademark infringement is a tort").  A trademark owner is injured in any state where his

trademark is infringed.  *Match.com, L.L.C. v. Fiesta Catering Int'l, Inc.*, No. 12-363, 2013 U.S. Dist. LEXIS 14099, at *11-12, n.6 (E.D. Va. Jan. 31, 2013) (citing *Lamporello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005)). Therefore, Prisma's distribution of the Prisma app in Virginia, as well as its processing of photos to Virginia customers, injures plaintiff in Virginia thereby bringing Prisma within the personal jurisdiction of Virginia courts.

In a similar case, the court in *Match.com, LLC v. Fiesta Catering Int'l, Inc.,* denied a motion to dismiss for lack of personal jurisdiction a trademark case brought by a Texas Corporation that owned the Match.com trademark against non-resident defendants that operated dating sites having over 8,000 paying subscribers in Virginia.  2013 U.S. Dist. LEXIS 14099 at *10, 18.  The court concluded that the Virginia long-arm statute extended personal jurisdiction to the defendant because plaintiff had established that defendants had "caused tortious injury in Virginia by an act or omission outside of Virginia."  *Id*. at *11.

The court in *Match.com* rejected the defendants' argument that jurisdiction was improper because Virginia was not the "focal point" of the alleged injury and the defendant did not "direct tortious conduct at [Virginia]."  *Id*. at *8.  The court explained that "specific jurisdiction in the Internet context may be based on 'an out-of-state person's internet activity directed at [the forum state] and causing injury that gives rise to a potential claim cognizable in [the forum state].'"  *Id*. at *9, n.4 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)).  Thus, the court held that defendants were incorrect to "argue that the 'brunt of the harm' must be suffered in Virginia; instead it is sufficient that the defendants directed activity into Virginia that cause harm there."  *Id*. at *9-10, n.4.

The court there also rejected defendants argument that jurisdiction was improper under the long-arm statute because "the injury from trademark infringement can only occur in the state

where the trademark owner resides." *Id.* at *11-12, n. 6.  The court held instead that "injury is felt wherever a defendant is using a mark in a manner that is likely to confuse consumers." *Id.* at *12, n. 6.  The court found no support for the argument that the plaintiff's state of residence was the "*only* state where the injury is felt." *Id* at *11-12, n. 6 (emphasis in original).

As in the *Match.com* case, defendant here repeatedly asserts that personal jurisdiction does not exist because the brunt of the harm it has caused is not in Virginia.  For example, on Page 6 of its brief, defendant complains that plaintiff has not shown that defendant "targets potential customers in Virginia more or in a different manner than it targets potential customers anywhere else in the United States."  (Dkt. No. 24, Prisma Br. at 6.)  On page 7, defendant asserts that plaintiff has not shown "that Virginia residents use this software proportionally more than residents of any other state."  (*Id.* at 7.)  And on page 8, it contends that plaintiff "does not claim to be harmed more in Virginia than in any other state." (*Id.* at 8.)

These "brunt of the injury" arguments are irrelevant to the personal jurisdiction question under the *Match.com* case.  Zaletel is not required to prove that he was hurt in Virginia more than other states, that defendant targeted customers in Virginia more than other states, or that more users downloaded its Prisma app in Virginia than in other states.  The only question is whether defendant committed tortious acts outside of Virginia that caused injury within the state of Virginia.  Where, as here, Prisma has distributed its infringing Prisma app, and provided services directly to millions of Americans, including many in Virginia, it cannot avoid personal jurisdiction by arguing plaintiff must prove that its injury was not worse elsewhere.

## 2.  Personal Jurisdiction over Prisma is Consistent with Constitutional Due Process

Personal jurisdiction comports with Constitutional due process when the defendant has sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction "does

not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The defendant must have "purposefully directed [its] activities at residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Fourth Circuit examines three factors to determine whether the requirements of due process are satisfied: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

In the internet context, the Fourth Circuit has held that a defendant purposefully avails itself of a forum state when it: "(1) directs electronic activity into the state, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Match.com*, 2013 U.S. Dist. LEXIS 14099, at *13. As the level of electronic interactivity and the commercial nature of the exchange of information increase, it is more reasonable "to conclude that a defendant directed its activities purposefully at the forum state and should reasonably have foreseen being haled into court in the forum jurisdiction." *Alitalia-Linee*, 128 F. Supp. 2d at 349.

### (a) Defendant has purposefully directed its activities to users in Virginia

Defendant Prisma has purposefully directed activities at Virginia residents under the Supreme Court *Burger King* test and the Fourth Circuit internet test.

Plaintiff Zaletel alleges that defendant has infringed its Prizmia® trademark throughout the United States by distributing the Prisma app to smartphone owners in every state. Prisma has

13

systematically promoted and distributed its app throughout the United States, including in Virginia, by (a) distributing the app through the two largest app stores in the country, the Apple App Store and the Google Play Store; (b) distributing the Prisma app to Virginia users via Prisma's website, http://prisma-ai.com, which links customers directly to those app stores; (c) processing images from Virginia app users on its servers outside the State of Virginia and sending the processed images (via the Prisma app) to the smart phone of a Virginia consumer; and (d) cooperating in interviews with journalists in national publications circulated in Virginia to promote the Prisma app to consumers here.

Defendant's processing of its customers' photographs and videos by its remote servers satisfies all three prongs of the *Match.com* test.  First, each time a Prisma app user in Virginia asks the app to apply a filter to a photograph, the Prisma app transmits the photo to Prisma's servers, which process the photo and then returns the processed image to Virginia as an electronic signal.  (Rinn Decl., Ex. 1 at 2.)  Second, Prisma's processing of these images for Virginia customers is a deliberate part of defendant's business, carried out to increase Prisma app downloads, and consequently, the value of the Prisma app to advertisers.  (*See* Rinn Decl., Ex. 1 at 2; Rinn Decl., Ex. 6 at 4; Rinn Decl. Ex. 7 at 5.).  Third, defendant's use of the infringing mark "Prisma" in association with the its app and the images it electronically transmits to its users in Virginia gives rise to a cause of action for federal trademark infringement in Virginia.  (*See* Dkt. No. 1 (complaint); Rinn Decl., Ex. 5 (USPTO rejection of Prisma's trademark application).) This is because plaintiff's registered trademark Prizmia® gives plaintiff the exclusive right to use the mark with downloadable photo editing apps, such as defendant's Prisma app.

In its brief, defendant concedes that it presumed that its Prisma app would be downloaded in Virginia but argues this is not enough to establish jurisdiction without "additional conduct of

the defendant that indicates an intent or purpose to serve the market in the forum state." (Dkt. No. 24, Prisma Br. at 4, 7 (quoting *AESP, Inc. v. Signamax, LLC*, 29 F. Supp.3d 683, 688 (E.D. Va. 2014)). As the above discussion shows, however, this is not a case where defendant's product was merely swept into Virginia by remote market forces. Rather, as explained above, defendant established an ongoing service relationship with its customers, by processing their images with Prisma's servers, which satisfies even defendant's statement of the law.

Moreover, defendant's stream of commerce defense does not apply where it is obvious that defendant knows its goods will be sold in the forum state. The court in *Jones v. Boto* held that personal jurisdiction was proper in Virginia, in a product liability case, over a nonresident defendant who distributed its artificial Christmas trees in the United States through Wal-Mart and Target, "given the ubiquitous presence of retail stores operated by Wal-Mart and Target Corporation throughout the United States and in Virginia." 498 F. Supp. 2d 822, 824, 827 (E.D. Va. 2007). The defendant argued that personal jurisdiction was improper because it sold the trees to Wal-Mart and Target in Hong Kong and thereafter was uninvolved in their distribution. *Id.* at 824. While the court acknowledged that mere knowledge of distribution in Virginia was not enough in the Fourth Circuit, it found that defendant's operation of a website, accessible in Virginia, was sufficient to provide additional, purposeful contacts that satisfy the requirements of due process. *Id.* at 829.

As in *Jones v Boto*, defendant Prisma has distributed its app through the two largest app stores in the United States, the Apple App Store and the Google Play Store. (Dkt. No. 25, Moiseenkov Decl. ¶ 3.) The reach and influence of these app stores is analogous to the ubiquity of Wal-Mart and Target stores in *Jones v. Boto*. They are widely used by smartphone users throughout the United States, including Virginia. As in that case, one "cannot seriously entertain

15

the suggestion that [Prisma] can supply [an app] to [the Apple App Store] without recognizing that its product[] will likely be purchased by consumers in, among other places, Virginia." *Jones*, 498 F. Supp. 2d at 829.  Also as in *Jones v Boto*, there are additional factors here that support personal jurisdiction, including defendant's processing of Virginia user's photos with its servers, and defendant's website, http://prisma-ai.com, which directly links customers to the Apple App Store and Google Play to download the Prisma app.

In internet cases, due process analysis of personal jurisdiction is flexible and depends on the quantity and nature of the defendant's contacts with the forum state.  For example, the court in *Alitalia-Linee v. Casinoalitalia.com* explained that personal jurisdiction over an online casino must be evaluated along a spectrum of internet businesses.  128 F. Supp. 2d at 341-42.  The Court articulated a continuum of contacts that can take place over the internet, from businesses that routinely conduct business with customers over the internet in a given forum, to passive websites that merely convey information in a given forum.  *Id.* at 349.  In the middle are websites that can exchange some information with a user, in which case "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information."  *Id.*  The Court found clear justification for personal jurisdiction over the foreign company based on the casino's real-time connectivity with its users and its sale of "credits" equivalent to real currency.  *Id.* at 350.  This was deemed sufficient even though there were only five registered users of the online casino in Virginia.  *Id.*

As in *Alitalia-Linee*, defendant Prisma provides an interactive app that provides real time interaction with Prisma app users.  (E.g. Rinn Decl., Ex. 1 at 2.)  As stated, when Prisma app users ask the app to apply a filter to one of their photographs, the Prisma app transmits the photo to Prisma's servers, which process and return the image to the user in Virginia.  (*Id.*)  Likewise,

16

the Prisma website, http://prisma-ai.com, facilitates the immediate download of the Prisma app

by including links that allow website visitors to go directly to the Apple App Store and Google

Play with a single click.  (Rinn Decl., Ex. 3.)

Prisma incorrectly argues in its brief that *Intercarrier Communications v. WhatsApp*, a

patent case, stands for the proposition that an app distributor cannot be sued in Virginia based on

distribution of the app though a third-party app store.   (Dkt. No. 24, Prisma Br. at 5.)  In contrast

to this case, the court in *WhatsApp* found that there were no purposeful contacts with Virginia

other than distribution through the App Store.  *Intercarrier Commc'ns LLC v. WhatsApp Inc.*,

No. 12-776, 2013 U.S. Dist. LEXIS 131318, at *6, 11-12 (E.D. Va. Sept. 12, 2013).   The court

found that the WhatsApp "share location" feature was insignificant and optional; and indeed, it

was in no way analogous to the real time relationship between Prisma and its users by which

Prisma processes and returns their images from its remote servers.  *See id.* at *12-13.

The facts here show that defendant has purposefully directed its activities to Virginia

through its distribution and promotion of its Prisma app and its interactive processing of digital

images submitted to its remote servers by Virginia users.

### (b)      Zaletel's Trademark Infringement and Unfair Competition Claims Arise out of Defendant's activities directed at Virginia residents

Plaintiff alleges in its complaint that defendant has infringed its federally registered

trademark in violation of 15 U.S.C. § 1114(a) and engaged in unfair competition under 15 U.S.C.

§ 1125(a). (Dkt. No. 1.)  These causes of action arise directly from defendant's purposeful

activities directed toward residents of Virginia.  Defendant has infringed the Prizmia® trademark

when smartphone users downloaded the Prisma app to their smartphones; when Prisma

processed a Virginia user's photograph or video in its servers and returned it to be viewed on the

Prisma App; and when Virginia residents visited the Prisma website, http://prisma-ai.com, and

clicked the link that took them directly to the Apple App Store or Google Play to download the Prisma app.

The core of plaintiff's complaint is the allegation that plaintiff is being damaged by consumer confusion between its registered Prizmia® trademark and defendant's use of the mark Prisma on a very similar product.  The processed images that Prisma sends back to users of its app, along with the promotion of the Prisma app on the Prisma webpage, and through interviews with publications directed at Virginia, are the kinds of acts that give rise to consumer confusion at the heart of plaintiff's trademark and unfair competition claims.  As the U.S. Patent and Trademark Office recently explained, in refusing to register Prisma as a trademark, the name "Prisma" is confusingly similar to plaintiff's registered trademark "Priszmia." (Rinn Decl., Ex. 5 at 3-6.)  Prisma's infringing and illegal activities have caused significant and irreparable damage to plaintiff's reputation, goodwill, and sales.

### (c)     Personal jurisdiction over Prisma in Virginia is reasonable

The last step in analyzing personal jurisdiction is consideration whether personal jurisdiction "would be constitutionally reasonable." *ALS Scan, Inc.*, 293 F.3d at 712.  This Court considers several factors when making this reasonableness determination: "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies." *Jones*, 498 F. Supp. 2d at 830.

Turning to these factors, first, Virginia is more convenient to Prisma than California because Virginia is marginally closer to Russia where all defendants' relevant witnesses and documents are likely located.  (Rinn Decl. ¶ 20.)  Prisma admits that "most of Prisma Labs'

employees reside in Russia." (Dkt. No. 24, Prisma Br. at 7.) Prisma's CEO is likely to be the most significant witness in this case and he resides in Russia. (*See id.*; *see also* Rinn Decl., Ex. 7 at 1; Dkt. No. 25, Moiseenkov Decl. ¶¶ 2, 6-7.) Prisma therefore cannot credibly claim unjust burden in bringing its witnesses to Virginia rather than California. While Prisma argues that it would be a significant burden to transport evidence from California to Alexandria (Dkt. No. 24, Prisma Br. at 11), Prisma has not identified any evidence that exists in California as opposed to Prisma's Russian offices. Defendant alleges throughout its brief that its US headquarters are in California, but as explained, it is not registered to do business in California, and lists a Wilmington, Delaware agent's address as it corporate home in its filings with the USPTO and the Delaware Secretary of State. (Rinn Decl. ¶ 19; Rinn Decl., Ex. 2; Rinn Decl., Ex. 5 at 1)

Second, Prisma admits that Virginia has an interest in ensuring that federal trademark and unfair competition laws are enforced. (Dkt. No. 24, Prisma Br. at 7 (acknowledging the "Court's interest in ensuring that the federal trademark and unfair competition laws will be enforced").) Virginia also has a particular interest in preventing consumer confusion and deception among its residents as a result of trademark infringement and unfair competition by foreign companies. *See First Fitness Int'l, Inc. v. Thomas*, 533 F. Supp. 2d 651, 659 (N.D. Tex. 2008) ("residents of all localities have an interest in preventing consumer confusion"). In this case, the U.S. Patent and Trademark Office recently informed Prisma that it was not entitled to a trademark registration for the same reason that plaintiff filed this lawsuit: Prisma's use of the word "Prisma" associated with its app is likely to cause confusion with plaintiff's registered trademark Prizmia®. (Rinn Decl., Ex. 5 at 3-6.)

Third, as demonstrated by plaintiff's preliminary injunction motion, plaintiff has a great interest in obtaining just and swift relief from defendant's infringement. (Dkt. No. 18.) Prisma's

19

trademark infringement has already caused plaintiff substantial injury to its product identity and the unique value of its trademark as an identifier of source.  Due to the widespread publicity associated with Prisma's infringing use of the word "Prisma" in association with its Prisma app, many of plaintiff's potential customers are likely to  believe that plaintiff's app is a knockoff of Prisma's, when in fact, plaintiff was the first to launch a photo filtering app, and is the party that owns trademark rights.  Prisma's actions are significantly damaging plaintiff's reputation, goodwill, and sales.

Finally, interstate efficiency and the goal of furthering substantive social policies favor jurisdiction in this venue.  Plaintiff is a small party and has chosen a forum that he believes can efficiently resolve this case, and one which is convenient to his residence.  Plaintiff should be entitled to his choice of forum.  Foreign defendants should not be allowed to deny plaintiff its choice of forum based on tenuous contacts to a distant forum.

**B.      Transfer Would Be Less Convenient and Would Prejudice Plaintiff**

Defendant's motion to transfer this case to the Northern District of California should be denied because defendant's contacts with California are negligible, recently acquired, and unrelated to this trademark infringement action.  Prisma's CEO admits in his declaration, signed in Russia, that most of Prisma's employees are based in Moscow, where presumably all relevant evidence also resided.  (Dkt. No. 25, Moiseenkov Decl. ¶ 6.)  Traveling from Moscow to Virginia is, if anything, more convenient, since the trip is slightly shorter than traveling from Moscow to San Francisco.  (Rinn Decl. ¶ 20.)  Plaintiff Michael Zaletel, on the other hand, who lives in North Carolina, would be greatly inconvenienced if required to litigate in San Francisco, thousands of miles from his home.  (Dkt. No. 20, Zaletel Decl. ¶ 2.)

The federal transfer statute,  28 U.S.C. § 1404(a), provides that:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The decision "whether to transfer an action to another district is committed to the district court's sound discretion."  *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003).  "In considering whether to transfer venue, a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum."  *Id.*

As to the first factor, although defendant overstates the extent of its relationship to California, plaintiff nevertheless concedes that it could have sued defendant in California for the same reasons that personal jurisdiction is proper in Virginia.  It bears noting, however, that in arguing for transfer in its brief, defendant never says that California was its US headquarters on September 29, 2016, when the complaint was filed, nor that the two software developers it now employs in Palo Alto worked for defendant when the complaint was filed.   The careful wording of these passages in defendant's brief suggests that these contacts are recently acquired and have nothing to do with this case. (Dkt. No. 24, Prisma Br. at 7, 9.)  Prisma's CEO and most of its employees still live and work in Russia.  (Dkt. No. 25, Moiseenkov Decl. ¶¶ 6-7.)

Defendant's claim that California is its headquarters cannot be corroborated by government records in California, in Delaware where it is incorporated, or at the USPTO where it is attempting to register "Prisma" as a trademark for its app.  (Rinn Decl. ¶ 19; Rinn Decl., Ex. 2; Rinn Decl., Ex. 5 at 1.)  Defendant is not registered to do business in California and has not listed its California address with the Secretary of State in Delaware or the USPTO.  (*Id.*)  As stated, Prisma has given the USPTO and the State of Delaware the address of a Delaware

registered agent as its corporate address.  (Rinn Decl., Ex. 2; Rinn Decl., Ex. 5 at 1.)

As to the convenience of parties and witnesses, defendant Prisma "bears the burden of demonstrating that the balance of convenience among the parties and witnesses is ***strongly*** in favor of the forum to which transfer is sought." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003) (emphasis in original)). Virginia is much more convenient than California to plaintiff Michael Zaletel.  Plaintiff resides and operates his business in Raleigh, North Carolina, only a few hours by car from the Alexandria courthouse in the Eastern District of Virginia.  (Dkt. No. 20, Zaletel Decl. ¶ 2.)

Prisma, on the other hand, cannot show that the balance of convenience ***strongly*** favor's transfer to California.  *See Koh*, 250 F. Supp. 2d at 633.  Defendant's key witnesses and evidence are in Russia.  (*See, e.g.*, Dkt. No. 25, Moiseenkov Decl. ¶ 6.)  Defendant has not explained any relevance of its two developers in Palo Alto to this trademark lawsuit that turns on decisions made several months ago in Moscow, nor has it described any of the relevant documents or evidence that it claims is at its offices  in California. (Dkt. No. 24, Prisma Br. at 10-11.) Moreover, the location of documents is no longer a significant concern in this age when virtually all document production is conducted electronically.  *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 15-21, 2015 U.S. Dist. LEXIS 50253, at *7-8 (E.D. Va. Apr. 16, 2015) (explaining that technology has made the location of documents a de minimis factor in the transfer analysis).  The declaration of defendant's CEO Moiseenkov, signed in Moscow, suggests that information relevant to this lawsuit is located in Moscow.  (Dkt. No. 25, Moiseenkov Decl.)

Finally, Prisma derides plaintiff's choice of Virginia as a "cynical attempt to forum shop" and urges the court to transfer the case as a penalty.  (Dkt. No. 24, Prisma Br. at 1, 11.)  As explained in plaintiff's preliminary injunction motion, plaintiff has a legitimate basis for seeking

speedy litigation of this dispute.  (Dkt. No. 18 at 8-9.)   Given the paucity of meaningful contacts

between Prisma and California, it is fair to ask whether Prisma's motion to transfer is based

primarily on a desire to avoid a prompt resolution of this dispute.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to dismiss, or in the

alternative, to transfer venue.


Date: December 6, 2016                    Respectfully submitted,

                                          */s/R. Scott Caulkins*
                                          R. Scott Caulkins, Esq., VSB No. 23584
                                          CAULKINS & BRUCE, PC
                                          2300 Wilson Blvd., Suite 240
                                          Arlington, VA 22201
                                          Telephone: (703) 558-3664
                                          Facsimile: (703) 525-1331
                                          scaulkins@caulkinsbruce.com

                                          *Pro Hac Vice:*

                                          J. Derek Vandenburgh (MN Atty. No. 0224145)
                                          Matthew J. Goggin (MN Atty. No. 0210705)
                                          Alexander S. Rinn (MN Atty. No. 0395616)
                                          CARLSON, CASPERS, VANDENBURGH,
                                          LINDQUIST & SCHUMAN, P.A.
                                          225 South Sixth Street, Suite 4200
                                          Minneapolis, Minnesota 55402
                                          Tel: (612) 436-9600
                                          Fax:  (612) 436-9605
                                          dvandenburgh@carlsoncaspers.com
                                          mgoggin@carlsoncaspers.com
                                          arinn@carlsoncaspers.com

                                          *Counsel for Plaintiff Michael Zaletel*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of December 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jeffry H. Nelson
NIXON & VANDERHYE, P.C.
901 North Glebe Road, 11th Floor
Arlington, VA 22203
Telephone: (703) 816-4000
Facsimile: (703) 816-4100
jhn@nixonvan.com
*Counsel for Prisma Labs, Inc.*

*/s/R. Scott Caulkins*
R. Scott Caulkins